Chief Justice Robertson
delivered the Opinion of the Court in this case—in the decision of which Judge Marshall took no part.
Sowell Woolfolk, father of the parties to this suit, and who died in Woodford county, in 1830, possessed of upwards of five hundred acres of land and other property, had published two papers, each purporting to be his last will; in the first, among other legacies and devises to others, he devised to the appellant Thomas—who in that document, was the principal devisee—all, or very nearly all his land in Woodford, excepting a tract of about twenty-five acres; and charged him with the payment of two thousand dollars to several other legatees, of whom the appellee, Joseph, was one; and in the last, he devised to Joseph, as the principal devisee, all his land in Woodfoi'd, excepting the same twenty-five acres, therein devised to Thomas, and charged Joseph with the payment of three thousand dollars bequeathed to others, and of which Thomas was to have six hundred dollars.
*536 This latter paper having been admitted to record ill the County Court of Woodford, as the last will of Sowell Woolfolk, the appellant, Thomas, who had resisted the probate of it, appealed, in his o:wn name alone, to this Court.
During the pendency of that appeal, the present parties made a compromise, in. writirig, duly executed and delivered, in which they agreed that Thomas should dis-i miss the appeal, arid release to Joseph his' equal interest as joint tenant with him in a small tract of land and d mill which they owned independently of the will, arid release, also, his unexplained interest ini the benefit of their mother’s life estate in some slaves, and in a part of the land devised to each of them, in each of the papers, and which, as stated in the contract, was conveyed to> Thomas by a deed of trust: and that Joseph, on his part, should give up a note on Thomas for two hundred dollars, balance ail accounts between them, and pay to him one thousand seven hundred dollars, including the legacy of six hundred dollars;
To that agreement the following supplement was appended:—“ Upo'n dismissing the appeal case of the will K of Sowell Woolfolk, deceased, it is understood that Jo- “ seph H. Woolfolk is not to pay the six hundred dollars, “ which the will obligates him to pay Thomas H. Wool* “ folk, in addition to the one thousand seven hundred dol* “ la.rs which the said Joseph is to pay upori the compro- “ mise this day made; but said Joseph H. Woolfolk re-u ceives the land bequeathed to him, and said Thomas IJ. “ Woolfolk is to receive the land bequeathed to him—to- “ wit, the piece of land between John Holbert’s and ‘‘ Cave’s mill—as witness our hands and seals, this 24th “ day of March, 1831.” (Signed and sealed by the parties.)
Thomas (as we infer) accordingly released his interest in the deed of trust, and in the mill and small tract of land held by both jointly, and dismissed the appeal which he had taken to this Court; and Joseph, too, surrendei-ed the bond for two hundred dollars, and (as we also infer) squared accounts, and seems to have beerj willing to pay the whole seventeen hundred dollars.
But, not long after tho dismission of tho appeal, the *537 other heirs of Sowell Woolfolk, who had not been par» ties, prosecuted a writ of error and procured a reversal of the order admitting the paper to record; and it was, therefore, finally rejected, as not being the will of the decedent.
Held, (upon the supplement especially) that the true spirit of the compromise required— not merely that Th. should dismiss his appeal, leaving Jo. to pay the consideration of the compromise for that only, while Th. by virtueof the will since established, should hold the land which the compromise was intended to secur'd to Jo.—but, that each of the parties to thd compromise relinquish all claim which he might havé, as heir, or devisee, to all property included inf he compromise and given, by either will, to the other; and that, So fur as they were concern fid, the interest of each should remain as fixed by the will to which the com promise referred; that they should eaehexecutesueh releases & c. as may be necessary to give effect to the compromise so construed. Consequently, that the eject, should be enjoined. As, by the rejectionof“Jo’s will,” he is exempt from the payment of the legacies charged on the land by the devise in that will, and ns, by the establishment of ‘Tom’s will,’ the payment of the legacies charged on the land, devolvo upon him, and Jo. by the compromise, is entitled t'o the land, he should take it cum onere, and reimburse Th. for, or relieve him from, the payment of the legacies, as a condition precedent to the conveyance hy Th. to Jo.--except so for as those legacies, viz, one sixth of the atnount, were to be paid to Jo. himself, and that heshould release. Jo. should also pay the expense of establishing “Tom’s will,”' as the advantage which Th. derives from it, accrues to Jo.
*537 In the prosecution of that writ of erroi, Thomas acted in good faith, and co-operated with Joseph in resisting the reversal; and afterwards seemed anxious that the heirs would sell their interests to Joseph. But after one of the heirs, at his instance, had sold out to Joseph, Thomas procured the probate of the first document, in which he is the principal devisee. And afterwards brought an ejectment against Joseph, for the land devised to himself ,in the will thus established; and Joseph filed a bill in chancery, enjoining the action, and praying for a release by Thomas of all his interest in the land.
Thomas resisted the decree sought by the bill, and, making his answer a cross bill, prayed for a rescission of the contract of compromise, on the ground of the unexpected and radical change in the attitude and interests of the parties, and of a consequent failure of consideration.
Upon final hearing, on the pleadings and exhibits, the Circuit Court perpetuated the injunction to the judgment of eviction, and decreed a release from the appellant to the appellee, on conditions which it is not now necessary to mention.
And this appeal is prosecuted to reverse that decree.
Whatever may, in other respects, be the effect of the contract of compromise, it is evidently not a conveyance or release by the parties, to each other, of their interests in the lands which each expected to enjoy; but must be understood as being altogether executory, and dependent, for eventual consummation, on the .fulfilment of. stipulated conditions. And therefore as, according to its true interpretation and effect, it could not have been made available as a release or conveyance of thé legal title in the action of ejectment—a suit in chancery was the appellee’s only appropriate remedy, if he be entitled to any relief whatsoever.
We freely confess, that we have had much difficulty *538 in determining,satisfactorily to ourselves, what the parties should be presumed to have intended by the contract, and what now should be deemed tobe the true measure of equity between them.
Upon full consideration, however, we have concluded, that the more rational and consistent interpretation of the agreement, is that the parties intended—not that the appellant should simply dismiss his appeal, and that the appellee, hazarding all contingencies, should give the stipulated consideration for the act of dismission alone; but that, whatever might happen, the parties should relinquish to each other, their respective interests, as heirs and as devisees in the two documents severally claimed by each of them to be the true last will, and that, as between themselves, the interests of each in the lands described in the agreement should ever remain as adjusted by the document which the appellant had contested.
Had not the supplement been added to the agreement, perhaps this construction of it might not have been proper. But, considering the fact, that the chief motive for resisting the probate, of the last paper, was the hope that, in the event of success, the appellant would be able to establish the first, as the will of his father, and thus get the land claimed by the appellee, and looking especially to the supplemental and explanatory agreement, we feel strongly inclined to the construction which we have just suggested, as more reasonable than any of the hypothetical interpretations which, in various views of this perplexing subject, have been suggested to our consideration.
The stipulation that the one “receives the land devised to him,” and the other “is to receive the land devised to him” was altogether superfluous, unless the parties had intended by it more than the agreement, as first signed, expressed on its face and by itself.
it means, as we are disposed to think, that the appellant, having, for what he deemed an adequate consideration for all his chances, abandoned all claim under the paper called his will, and agreed that, as between themselves, that denominated the appellee’s will should stand, consented that the appellee should hold, in the land dc- *539 vised to him in his will, all the interest to which'he (the appellant) might be entitled under his will, or as heir, if neither of the papers should be the will of their father.
The last decision o.f the epunty court (establishing‘Tom’s will’) heingunreversed, the legal presumption is, that, it was right, and will stand; and on that hypothesis, the case is decided: but, as it is possible that that judg’t may also be reversed, and that will he rejected also— Th. must be required to give bond to Jo. tore, fund the amount, he may pay in legacies (in consequence of being substituted to the rights and liabilities of Th. under the will)' in case that event (the rejection of-“Tom’s will’’-)' should occur.
And this construction of the contract itself, is fortified by the faGt already suggested, that the appellant, after the. rejection of the appellee’s will, urged one of his then po-heirs to sell his interest in the land to the appellee, and which, at his instance, was accordingly done, before he ofFered his idll for probate.
Had the appellee's will been finally, as at first, established, the appellant’s bargain would have been advantageous to him. Had his will been also rejected, or should it ever yet be annulled, even then his contract, which would have bound him only to relinquish his interest as one of the several heirs, would seem to have been probably not disadvantageous to him. Acquainted with all the facts, and speculating on the chances for setting aside the appellee’s will, and then establishing his own, he agreed, for a stipulated and valuable certainty, to dismiss his appeal, abandon the doubtful controversy, re-establish peace and concord in his deceased father’s family and, as far as all his rights—certain and contingent, might be concerned, let the appellee enjoy forever the land devised in the last will. There is no, sufficient ground for inferring fraud, mistake, or failure of consideration.
Then, such being, as we think it was, the object and understanding of the contract, such a compromise, of such a controversy, should be upheld in a Court of Equity And now, as the appellant’s interest in the land devised in the last will to the appellee, has, in consequence of' the establishment of the first will, been so increased as to enable him to secure to the appellee all, or nearly-all, the land which they intended by the compromise that he should hold, he should be deemed a trustee to that extent, and required to release to him. As, according to our interpretation of the intention of the compromise, the parties agreed that Joseph’s will should stand, and that each party should, in any and every event, continue to he entitled, as between themselves, to whatever that will-gave him—consequently, Thomas should release his sepa *540 rate interest in whatever was devised to Joseph by the rejected document, and the latter should release all his separate interest in whatever was devised to Thomas by the same paper.
And therefoi'e, Thomas should not now be permitted» under Ids will or otherwise, to evict Joseph from the land which, in the compromise, he agreed, for a valuable and meritorious consideration, should be held according to the will then established and called Joseph’s; but should be perpetually enjoined and required to relinquish all his present interest in it, as, by the compromise, he agreed to do; and Joseph, also, should, of course, relinquish all his present interest in the twenty-five acre tract devised to Thomas by the rejected document, and in which, as it is not devised in Thomas’ will, Joseph now has an interest as one of the heirs of the testator.
But, as Joseph will thus, by the establishment of Thomas’ will, be secured in the enjoyment of an entire tract of land, in which, after the rejection of his will, he would have been entitled to only one seventh part as ari heir, he should take the title of Thomas cum onerci that is, he should pay what Thomas is bound by that will, to pay as a charge on the devise to him; and as one sixth of that sum is bequeathed to Joseph himself, and which he must release, the amount which he ought to pay Thomas, is $1,6663. It was not the duty of Thomas to pro? cure the establishment of the will called his. It was more the interest of Joseph that it should be established; and as he, so far as the land is concerned, derives the entire benefit, he should be required to bear the incidental burthen.
The true measure of equity between the parties, is to place them, as nearly as possible, in the condition in •\vhich the rejected paper and compromise for confirming it, and guaranteeing all the rights conferred by it as a valid will, would have placed them.
But, as it appears, that the testator intended, by both documents, to place each of the present parties on an equality as to the slaves and personalty, and we cannot, from any thing before us, decide that their interests, in those particulars, are not substantially the same in value *541 trader each will—we deem it unnecessary to require any release from either party of his interest in any thing but the land, in which alone there seems to be any just cause for release, and which appeared to be the great object of the compromise.
We must now decide the case upon the (only judicial) hypothesis, that the will called Thomas’ is, as decided by the County Court, the only true will of Sowell Wool-folk, deceased, and that the order admitting it to record in the County Court will never be set aside. But it too may possibly be annuled, hereafter. If such an event should eyer occur, its effect, on this case, would be, to entitle the parties to stand, not as this opinion, founded on the facts now existing, places them, but just as the compromise, understood and applying as we have interpreted it, should regulate their rights; and in such a possible contingency, that which the parties could claim or be entitled to from each other, would be a fulfilment of the stipulations of their contract, and mutual releases of their respective interests, as_ heirs, in the lands conceded to each other by the agreement, and a niutual restitution of every thing more which they may, in the mean time, have respectively acquirer! in consequence of the final decree, which shall be rendered and carried into effect in pursuance of this opinion,
But, as the case now stands in this Court, we decide that, whenever the appellee shall pay to the appellant ‡ 1,6G6S, with interest thereon from the time when, ac? cording to the now established will, the charge of two thousand dollars became payable, or shall have relieved him from that burthen, if it still rest upon him, by paying those entitled to the benefit thereof, and shall release his interest in that legacy, and shall also pay whatever-may still remain unpaid, of the one thousand seven hum dred dollars which he agreed to pay as a part of the consideration for the compromise, and shall, moreover, release his interest in the aforesaid tract of twenty-five, acres—the injunction should be perpetuated, and the appellant should be required to release all his interest in the land devised to the appellee in the rejected will; but that, if, within reasonable time to be allowed by the Cir* *542 euit Court, the appellee shall not have done all that is herein required, as the condition on which he may be relieved, his injunction should be discharged, and his bill dismissed.
It is also but just, as a reasonable precaution, that, in the event of the appellee’s compliance with the preliminary requisitions just suggested, and of a consequent perpetuation of his injunction, the appellant should give to him, a bond with approved security to refund the two thousand dollars, with interest, in the event of a future annulment of the will now considered the established will.
Wherefore, as the Circuit Court did not altogether decide according to the principles of this opinion—it is now decreed and ordered, that the decree be reversed, and the cause remanded.